**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Action No.: 20-108 (RC) |
| | : | |
| WALTER HARRIS III, | : | Re Document No.: 22 |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION**

**DENYING DEFENDANT'S MOTION TO DISMISS**

**I. INTRODUCTION**

Defendant Walter Harris is charged with one count of Unlawful Possession of a Firearm and Ammunition Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1). *See* Indictment, ECF No. 13. Currently before the Court is Mr. Harris's motion to dismiss the indictment pursuant to Rule 16 of the Federal Rules of Criminal Procedure. *See* Def.'s Mot. Dismiss, ECF No. 22. Mr. Harris argues that the Government failed to preserve potential forensic evidence pertaining to the firearm recovered from his person and that the appropriate sanction is dismissal of the indictment or, in the alternative, suppression of the firearm as evidence. *Id.* at 1, 6. The Government opposes his motion and argues that it did not violate Rule 16 and that Mr. Harris cannot demonstrate that any potential forensic evidence on the firearm would be material and exculpatory. *See* Gov't Opp'n Mot. Dismiss ("Gov't Opp'n"), ECF No. 23. For the reasons set forth below, the Court denies Mr. Harris's motion.

## II.  BACKGROUND

As alleged in the criminal complaint, a citizen flagged down police at a gas station in Northeast Washington, D.C. in relation to "a possible mental health consumer in need of assistance."  Statement of Facts at 1, ECF No. 1-1.  Police found an individual, later identified as Mr. Harris, "rolling around the ground in front of the [gas station]."  *Id.*  The officers attempted to speak with Mr. Harris but decided to complete a pat down search of him because of his "erratic behavior."  *Id.*  One of the officers "felt a firearm in the front pocket" of Mr. Harris's sweatshirt.  *Id.*  After detaining Mr. Harris, police recovered the firearm, a .9-millimeter semiautomatic handgun, from the front pocket of Mr. Harris's sweatshirt.  *Id.*  As a result, Mr. Harris was placed under arrest.  *Id.*

After Mr. Harris was indicted, the Government "sought a search warrant for Mr. Harris's buccal swab to compare his DNA profile to DNA that may be present on the firearm recovered in this case."  Order at 1, ECF No. 20.  Mr. Harris filed a motion requesting that the Court void the search warrant, arguing that the Government lacked probable cause.  *Id.*  The Court denied Mr. Harris's motion and allowed the Government "to retrieve a buccal swab DNA sample from [him]."  *Id.* at 3.

About two months after the Court denied Mr. Harris's motion to void the search warrant, the Court held a telephone status conference.  The Government informed the Court that it could no longer test the firearm for forensic evidence because the firearm already had been test fired in a water tank.  As a result, no usable DNA swabs could be taken from the weapon.  Because the potential forensic evidence on the firearm is no longer available, Mr. Harris has moved to dismiss the indictment, arguing that the Government failed to preserve potentially material and exculpatory evidence for his case.  *See* Def.'s Mot. Dismiss at 2–6.

### III.  ANALYSIS

The Federal Rules of Criminal Procedure provide that:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control, and . . . the item is material to preparing the defense; . . . the government intends to use the item in its case-in-chief at trial; or . . . the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  Prior to a request for evidence, "the duty of disclosure is operative as a duty of preservation." *United States v. Bryant*, 439 F.2d 642 (D.C. Cir. 1971), *abrogated on other grounds as recognized in United States v. Vega*, 826 F.3d 514, 533 (D.C. Cir. 2016).[1]  Under Rule 16, evidence is material to preparing the defense whether it is exculpatory or inculpatory, "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)).

Mr. Harris argues that the "forensic evidence on the weapon was critical to the defense." Def.'s Mot. Dismiss at 4.  He suggests that "the presence of another person's DNA or fingerprints on the firearm would have [] provided particular insight as to what may have happened prior to the officer's alleged discovery of it on [his] person." *Id.* at 4–5.  Mr. Harris claims that "the absence of [his] DNA or fingerprints would have been essential to his defense."

---

[1] The parties disagree about whether *Bryant* still supplies the relevant standard for preservation.  At oral argument, citing *United States v. Taylor*, 312 F. Supp. 3d 170 (D.D.C. 2018), counsel for Mr. Harris argued that although *Bryant's* holding with respect to the Due Process Clause has been abrogated, the Rule 16 analysis in the opinion survives.  *See id.* at 181 ("But the D.C. Circuit has never disavowed the Rule 16 analysis contained in *Bryant*, and, accordingly, that aspect of the holding remains binding on this Court.").  The Court agrees that the Rule 16 analysis in *Bryant* remains good law and that the Government has a duty to preserve evidence under that rule.

*Id.* at 5.  As such, he argues that the Government "has deprived the defense of potentially exculpatory evidence and the jury of a full understanding of the circumstances."  *Id.*  For this reason, Mr. Harris urges the Court to dismiss the indictment because he claims that "no sanction short of dismissal [] will suffice in vindicating [his] discovery rights and preventing similar violations in the future."  *Id.*

The Government opposes dismissal and argues that under *Arizona v. Youngblood*, Mr. Harris must demonstrate that the Government failed, in bad faith, to preserve material and potentially exculpatory evidence.  Gov't Opp'n at 4 (citing 488 U.S. 51, 58 (1988)).  Because, as alleged in the criminal complaint, Mr. Harris was found with the gun on his person, the Government contends that he cannot establish materiality or that the evidence would be exculpatory.  *Id.* at 6.  Moreover, the Government argues that its prior efforts to obtain a search warrant for a buccal swab and to conduct DNA testing on the firearm make clear that the potential forensic evidence was not destroyed in bad faith.  *See id.* at 6–8.  If the Court does find a Rule 16 violation, the Government argues that dismissal or suppression of the firearm would be an unduly harsh sanction for a violation that did not result from bad faith.  *Id.* at 8 (citing *Marshall*, 132 F.3d at 70).

The Government's reliance on *Youngblood* is misplaced given that Mr. Harris has not alleged any due process violation.  Although *Youngblood* clearly "narrowed the Government's *constitutional* obligations regarding the preservation of evidence," *United States v. Kingsbury*, 317 F. Supp. 3d 476, 478 (D.D.C. 2018) (emphasis added), the Government continues to have obligations to preserve evidence under Rule 16, *see Bryant*, 439 F.2d at 651.  Thus, the questions here are whether the potential forensic evidence on the firearm was "material to preparing the

4

defense," Fed. R. Crim. P. 16(a)(1)(E), and, if so, what sanction is appropriate for the Government's failure to preserve the potential forensic evidence.

The Court is not convinced that any potential forensic evidence on the firearm would be material under Rule 16. As an initial matter, it is not clear that any forensic evidence actually existed on the surface of the firearm. But even if DNA or other trace evidence did exist on the weapon, the Court cannot conclude that it would be material. In *Kingsbury*, when considering whether the Government had to preserve DNA swabs used on a firearm and magazine, the court concluded that "it is impossible to know whether the [DNA] swabs are exculpatory, material, or discoverable under Rule 16 until they are tested." *Kingsbury*, 317 F. Supp. 3d at 479. Even though the term "material" in Rule 16 includes both inculpatory and exculpatory evidence, *see Marshall*, 132 F.3d at 67, the court stated that "it is impossible to tell whether the swabs are 'important' to Kingsbury's defense until they are tested, because the tests could be—and, according to the government, are statistically most likely to be—inconclusive." *Kingsbury*, 317 F. Supp. 3d at 479 n.2; *see also United States v. Anderson*, 169 F. Supp. 3d 60, 65–66 (D.D.C. 2016) ("[I]t is unclear whether the swabs are material to preparing Anderson's defense, whether the Government intends to use any DNA evidence during its case-in-chief, or if any DNA is obtained, whether it is from or belongs to Anderson."); *United States v. Quinones*, 236 F. Supp. 3d 375, 378 (D.D.C. 2017) ("[T]here is no basis at this stage to conclude that the swabs or genetic material would be 'material to preparing the defense.'").[2] Certainly, an inconclusive

---

[2] Counsel for Mr. Harris argued at oral argument that the DNA swab cases are inapposite because in those cases the defendants still had an opportunity to have an expert review the results of any forensic testing conducted by the Government or to conduct a separate analysis if the Government testing did not consume the entire swab. Here, no party will have an opportunity to test the firearm for forensic evidence, so Mr. Harris argues that the reasoning in these cases should not apply. This distinction, however, does not change the more general proposition that it

forensic test or one that reveals the presence of his DNA on the firearm would not be critical to Mr. Harris's defense. Although the Court shares Mr. Harris's concerns with the Government's handling of the evidence in this case,[3] it simply is not clear that any DNA evidence on the firearm, which was recovered from Mr. Harris's pocket, would "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting with impeachment or rebuttal." *Marshall*, 132 F.3d at 68.   Therefore, the Court concludes that the Government did not violate Rule 16 and, as such, will not consider whether dismissal, suppression of evidence, or any other sanction is required.[4]

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 22) is **DENIED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 20, 2021                                                                                    RUDOLPH CONTRERAS
                                                                                                                            United States District Judge

---

is impossible to know whether untested forensic evidence would be "exculpatory, material, or discoverable under Rule 16." *Kingsbury*, 317 F. Supp. 3d at 479.

[3] Despite these concerns, the Court is unwilling to infer bad faith on the part of the Government. Although the test firing of the weapon before any forensic evidence could be collected—after the Government sought and received a warrant to obtain a buccal swab from Mr. Harris—represents careless, and perhaps negligent, handling of the key piece of evidence in the Government's case, the Court has no reason to suspect that any forensic evidence was intentionally destroyed.

[4] Despite its conclusion with respect to Mr. Harris's motion, the Court would be inclined to permit evidence to be introduced at trial that allows Mr. Harris to pursue his theory that had forensic testing been done, it would exculpate him.

6